UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| DR. J. DAVID GOLUB, | * |
|   | * |
| Plaintiff, | * |
|   | *  Civil Action No. 19-cv-10478-ADB |
| v. | * |
|   | * |
| NORTHEASTERN UNIVERSITY, | * |
|   | * |
| Defendant. | * |

**MEMORANDUM AND ORDER ON
PLAINTIFF'S MOTION FOR RECONSIDERATION
AND DEFENDANT'S MOTION TO DISMISS**

BURROUGHS, D.J.

J. David Golub ("Golub") previously worked part-time at Northeastern University ("Northeastern"). In October 2017, Northeastern informed Golub that it had hired a full-time faculty member and would no longer need his part-time services. [ECF No. 1 at 4–5]. Golub filed a complaint in which he alleged that Northeastern's decision to terminate his part-time employment was age discrimination, in violation of the Age Discrimination in Employment Act ("ADEA"), and constituted a breach of contract, a breach of the implied covenant of good faith and fair dealing, and promissory estoppel. [ECF No. 1].

On November 18, 2019, the Court dismissed the complaint in part and gave Golub "leave to amend [the] complaint regarding his supplemental state law claims (Count 3) to establish that there was a contract and that the amount in controversy exceeds $75,000." [ECF No. 28 (the "November Order") at 16]. Presently before the Court are Golub's motion to reconsider the November Order, [ECF No. 34], and Northeastern's motion to dismiss the amended complaint,

[ECF No. 36].  For the reasons that follow, the motion to reconsider, [ECF No. 34], is DENIED and the motion to dismiss, [ECF No. 36], is GRANTED.

**I.      FACTS AS ALLEGED**

The following facts are taken from the complaint, [ECF No. 1], and amended complaint, [ECF No. 35], the factual allegations of which are assumed to be true when considering the motion to dismiss, Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).  Typically, an amended complaint supersedes an original complaint, however, "that does not mean that the original complaint is a nullity and can be relevant for no purpose whatever."  Ultra-Temp Corp. v. Advanced Vacuum Sys., 194 F.R.D. 378, 382 (D. Mass. 2000); see also Fiorillo v. United Techs. Corp., No. 3:13-cv-1287, 2015 LEXIS 133221, at *3 (D. Conn. Sept. 30, 2015) ("[T]he Court may still credit admissions in the original complaint and attached exhibits." (internal quotation marks and citation omitted)).

Golub alleges that he started working part-time for Northeastern's College of Professional Studies (the "College") in 2010, where he was appointed a part-time lecturer in the College's Accounting and Tax Program, including serving as a Master Teacher and Lead Instructor.  [ECF No. 1 at 1–2; ECF No. 35 at 1–2].  The part-time lecturer position was not paid, but rather signified eligibility to receive assignments to teach courses for compensation, such as the Master Teacher and Lead Instructor positions.  [ECF 21-1 at 37]; see, e.g., [ECF No. 11-5 at 2 (assigning Golub the position of Co-Part-time Faculty Affiliate "to oversee the academic program in finance and accounting management"); ECF No. 42-4 at 38 (providing an example of a Master Teacher assignment from March 2010); ECF No. 42-5 at 15 (providing an example of a Lead Instructor assignment from March 2011)].  Since 2014, he has applied for a number of

academic positions at Northeastern that he believes he is highly qualified for, but has not received any interviews or offers. [ECF No. 35 at 5, 11].

On October 8, 2017, Golub received an email from the College informing him that it had concluded a search for a new full-time faculty member and that it would no longer require his part-time services as a Master Teacher and Lead Instructor. [ECF No. 11-1; ECF No. 35 at 2]. Golub claims that the newly hired full-time faculty member is a "considerably younger female . . . professor, who holds a foreign doctoral degree, is not a CPA, has limited teaching experience, [and] virtually no accounting practice experience . . . ." [ECF No. 35 at 2]. Golub believes that his termination constituted a violation of federal age discrimination laws as well as a breach of his employment contract for the September 2017 through August 2018 academic year. [ECF No. 35 at 3, 9].

Golub completed an Equal Employment Opportunity Commission ("EEOC") online questionnaire ("Intake Questionnaire") in February 2018 to find out about the necessary steps for filing a charge of discrimination. [ECF No. 35 at 14; ECF No. 1-1 at 17]. On February 16, 2018, the EEOC emailed Golub a notice of a scheduled interview. [ECF No. 1-1 at 16]. That notice also included the following relevant language:

> **ANSWERING THESE QUESTIONS IS NOT THE SAME AS FILING A CHARGE OF DISCRIMINATION.**
>
> A charge of discrimination is a signed statement asserting that an organization engaged in employment discrimination. It requests EEOC to take remedial action. The laws enforced by EEOC . . . require you to <u>file a charge</u> before you can file a lawsuit for unlawful discrimination. There are strict <u>time limits</u> for filing a charge.

[Id. (emphasis in original)]. In March 2018, Golub's claim was transferred from the EEOC office in Newark to its office in Boston, because Northeastern was not under the Newark office's jurisdictional authority. [ECF No. 35 at 14].

In May 2018, Golub again received an offer for another appointment as a part-time lecturer in the College, but was not offered the Master Teacher and Lead Instructor position. [ECF No. 35 at 11]. Since May 2018, he has not been assigned any courses to teach and therefore has not received any compensation. [Id.].

On November 14, 2018, the EEOC informed Golub that he had failed to sign his correspondence and, as a result, no formal charge had been filed. [ECF No. 1-1 at 11]. The EEOC told him that "[t]hese steps are necessary if you wish to file a charge," [id. (emphasis in original)], and that he should review and sign the correspondence quickly because of the strict timelines regarding filing a charge, [id.]. On November 19, 2018, Golub filed his charge with the EEOC, alleging that Northeastern's termination of his part-time employment as a Master Teacher and Lead Instructor was age discrimination in violation of the ADEA. [Id. at 8–9].

On December 17, 2018, the EEOC issued a Dismissal and Notice of Rights. [Id. at 1, 3]. The notice informed Golub that the EEOC was unable to conclude that his employment was terminated in violation of federal law. [Id. at 1]. It noted that "it [wa]s unlikely that the EEOC would find a violation of federal law on the part of [Northeastern] if it invested additional resources." [Id.]. Golub asked that the EEOC reconsider its final determination regarding his termination and to consider a new claim that Northeastern was discriminating against him by failing to hire him for positions for which he believed he was qualified, but the EEOC declined. [ECF No. 35 at 15]. Because Golub never filed a charge concerning this new claim of Northeastern's alleged failure to hire, the "EEOC did not address the age discrimination claim on the basis of [Northeastern's] refusal to interview, discuss, consider or hire for an alternative faculty position." [ECF No. 1 at 7].

## II. PROCEDURAL HISTORY

Golub filed this complaint on March 14, 2019, [ECF No. 1], alleging (1) a violation of the ADEA by Northeastern when it terminated his employment (Count 1); (2) a violation of the ADEA by Northeastern when it refused to hire him for other positions (Count 2); and (3) state law claims including breach of contract, breach of the duty of good faith and fair dealing, and promissory estoppel (Count 3). [ECF No. 1 at 7–8].

Northeastern filed its motion to dismiss on May 20, 2019, [ECF No. 10], arguing that the Court lacked subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and that Golub's complaint failed to state a claim under Rule 12(b)(6). [ECF No. 11 at 8–9]. Golub opposed the motion to dismiss and filed a cross-motion to amend his complaint. [ECF No. 20].

On November 18, 2019, the Court granted the motion to dismiss in part, finding that Golub had failed to file a timely charge with the EEOC and had therefore not exhausted his administrative remedies. [ECF No. 28 at 7–12, 16]. The Court nonetheless considered the merits of both Golub's wrongful termination and failure to hire claims, and determined that Golub had failed to state a claim that Northeastern had violated federal age discrimination laws, either by terminating his employment as a Master Teacher and Lead Instructor or by failing to hire him for other jobs to which he had applied and for which he felt he was qualified. [Id. at 7–13]. The Court dismissed the federal age discrimination claims with prejudice and denied Golub's motion to amend the complaint, but gave Golub "leave to amend his complaint regarding his supplemental state law claims (Count 3) to establish that there was a contract and that the amount in controversy exceeds $75,000." [Id. at 16].

Golub filed a motion to reconsider on December 16, 2019, [ECF No. 34], and Northeastern opposed, [ECF No. 38]. Golub filed his amended complaint on December 18,

2019.  [ECF No. 35].  Meanwhile, Northeastern filed a motion to dismiss the amended complaint on December 26, 2019, [ECF No. 36], and, after the Court granted an extension, [ECF No. 41], Golub opposed on February 15, 2020, [ECF No. 42].  The motion to reconsider and the motion to dismiss are currently before the Court.

### III.   THE MOTION TO RECONSIDER

Golub seeks reconsideration of the Court's November Order, arguing that his claim is not time barred because any untimeliness was due to the EEOC and that the alleged discrimination was a continuing violation of the ADEA because Northeastern repeatedly failed to hire him for positions for which he believes he was qualified.  [ECF No. 34-3 at 4–15].  The Court has previously considered and rejected these arguments, finding that Golub failed to exhaust his administrative remedies and that, even if the Court were to reach the merits, he failed to adequately allege that he was terminated or not offered jobs because of age discrimination on the part of Northeastern.  [ECF No. 28 at 7–13].

#### A.   Legal Standard

Golub filed his motion under Rules 59 and 60 of the Federal Rules of Civil Procedure. [ECF No. 34-1 at 1].

Under Rule 59, a party may move to alter or amend a judgment within twenty-eight days of the entry of judgment.  Fed. R. Civ. P. 59(e).  Rule 59 "motions for reconsideration are appropriate only in a limited number of circumstances: if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust."  United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009).  The motion for reconsideration "is not an avenue for litigants to reassert arguments and theories that were previously rejected by

the Court." Parker Waichman LLP v. Salas LC, 322 F.R.D. 436, 438 (D.P.R. Oct. 12, 2017); see also Biltcliffe v. CitiMortage, Inc., 772 F.3d 925, 930 (1st Cir. 2014) ("A motion for reconsideration is not the venue to undo procedural snafus or permit a party to advance arguments it should have developed prior to judgment, nor is it a mechanism to regurgitate old arguments previously considered and rejected." (internal citations and quotations marks omitted)). Granting a motion for reconsideration under Rule 59 "is an extraordinary remedy which should be used sparingly." Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006). Consequently, the First Circuit has explained "that it is very difficult to prevail on a Rule 59(e) motion." Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 7 n.2 (1st Cir. 2005). "But Rule 59(e) does not apply to motions for reconsideration of interlocutory orders from which no immediate appeal may be taken . . . ." Nieves-Luciano v. Hernandez-Torres, 397 F.3d 1, 4 (1st Cir. 2005).

Instead, under Federal Rule of Civil Procedure 60(b), such interlocutory orders "remain open to trial court reconsideration until the entry of judgment." Nieves-Luciano, 397 F.3d at 4 (internal quotation marks omitted). Relevant to consideration of Golub's motion is Rule 60(b)(6), a catchall provision that permits "the court [to] relieve a party . . . from a final judgment, order or proceeding for . . . any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). The Rule grants the Court "the power to vacate judgments [or orders] 'whenever such action is appropriate to accomplish justice.'" Bouret-Echevarría v. Caribbean Aviation Maint. Corp., 784 F.3d 37, 41 (1st Cir. 2015) (quoting Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 19 (1st Cir. 1992)).

"[A] movant seeking relief under Rule 60(b)(6) [must] show 'extraordinary circumstances' justifying the reopening of a final judgment." Gonzalez v. Crosby, 545 U.S. 524, 535 (2005) (quoting Ackermann v. United States, 340 U.S. 193, 199 (1950)). "In determining

7

whether extraordinary circumstances are present, a court may consider a wide range of factors. These may include, in an appropriate case, the risk of injustice to the parties and the risk of undermining the public's confidence in the judicial process." Sanchez v. United States, No. 00-cv-00141, 2019 WL 2526727, at *2 (D.R.I. June 19, 2019) (quoting Buck v. Davis, 137 S. Ct. 759, 778 (2017)). A motion for reconsideration under Rule 60 may only be granted upon "a misunderstanding or other error 'not of reasoning but apprehension.'" Scottsdale Ins. Co. v. Byrne, No. 16-cv-11435, 2018 WL 2056153, at *1 (D. Mass. May 2, 2018) (quoting Ruiz Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 82 (1st Cir. 2008)).

### B. Discussion

Here Golub is unable to satisfy the requirements of either Rule 59 or 60. Golub claims that the Court, in its earlier ruling, failed to recognize (1) that his ADEA claims should be equitably tolled because his filing was only untimely due to circumstances beyond his control, namely, that his original questionnaire was transferred from the New Jersey EEOC office to the Boston office, and (2) that his EEOC claim was timely as the filing date relates back to the original questionnaire. [ECF No. 34-3 at 4–12].

First, "[t]he reasonable relation doctrine operates to prevent an amendment from being time-barred if it is sufficiently connected to the original charge . . . . An amendment arises out of the same subject matter as a timely-filed charge 'where the protected categories are related' or 'where the predicate facts underlying each claim are the same.'" Davis v. Lucent Techs., Inc., 251 F.3d 227, 233 (1st Cir. 2001) (quoting Conroy v. Boston Edison Co., 758 F. Supp. 54, 58 (D. Mass. 1991)).

The relation back doctrine is inapplicable in this case, however, because, as previously explained by the Court in its November Order, Golub never filed a timely charge and thus there was not a timely filed charge that a subsequent charge could relate back to. [ECF No. 28 at 7–

10].  Despite Golub's claims, submitting the Intake Questionnaire did not initiate a valid claim. Golub was consistently informed that the Intake Questionnaire he submitted was not the same as a formal charge and that there were strict timelines concerning when a formal charge could be filed.  [Id. at 3, 9].  Further, the Questionnaire itself did not misleadingly suggest that filing the Questionnaire would be enough to initiate a formal charge and in fact clearly spelled out the opposite.  [Id. at 9].  Because Golub's later filed charge was untimely, [id. at 9], any amendment to that untimely charge would likewise be untimely, even if it related back to the original charge.

Alternatively, Golub argues that the Court should have found that his filing deadline was equitably tolled based on a conversation he had with the EEOC that misled him into thinking that his claim would be timely filed.  [ECF No. 34 at 8–12].  "Equitable tolling is generally applicable where 'circumstances beyond the plaintiff's control precluded timely filing' or plaintiff was 'materially misled into missing the deadline.'"  Uwakwe v. Pelham Acad., 286 F. Supp. 3d 213, 224 (D. Mass. 2017) (first quoting Monrouzeau v. Asociación Del Hosp. Del Maestro, Inc., 153 F. App'x 7, 8 n.1 (1st Cir. 2005), and then quoting Ortega Candelaria v. Orthobiologics LLC, 661 F.3d 675, 680 (1st Cir. 2011)).  The First Circuit has cautioned that equitable tolling should be "sparingly invoked" and only "used to excuse a party's failure to take an action in a timely manner, where such failure was caused by circumstances that are out of his hands."  Ortega Candelaria, 661 F.3d at 679 (internal quotation marks omitted).

Golub relies on a conversation he claims to have had with an EEOC representative who informed him that because the charge he eventually filed indicated that there was a "continuing violation" in his case, there was no need for the initial claim to be timely.  [ECF No. 34-3 at 3]. He asserts that equitable tolling is warranted because the misinformation given to him in this conversation caused him to believe that his claim would qualify as timely filed.  [ECF No. 34-3

at 10–11]. "This vague allegation, never reiterated in an affidavit and unsubstantiated by any other evidence, is insufficient to establish that equitable tolling would be appropriate here." Davis, 251 F.3d at 234-35 (considering the appeal of a district court's dismissal of a claim of sexual harassment and wrongful termination and finding "no cognizable evidence that . . .. the EEOC . . . made statements that could be characterized as affirmatively misleading." (internal quotation marks omitted)).

Next. with regard to his claim of a continuing violation, Golub asserts that his complaint was timely because Northeastern's repeated failure to hire him for various positions constituted a continuing violation. [ECF No. 34-3 at 9–10]. The Court has previously considered and rejected Golub's argument that Northeastern's failure to hire him for those specific jobs was a violation of the ADEA, where Northeastern continued to hire him as an adjunct faculty member during the same time period. [ECF No. 28 at 11–13]. "The mere allegation that Golub applied for jobs at Northeastern and did not receive interviews or offers is insufficient to establish that Northeastern deliberately failed to hire him because of age discrimination." [Id. at 13]. Further, as Golub acknowledges the "EEOC did not address the age discrimination on the basis of [Northeastern's] refusal to interview, discuss, consider or hire for an alternative faculty position." [ECF No. 28 at 12 (quoting ECF No. 1 at 7)]; see also [ECF No. 35 at 15 ("The EEOC did not address the age discrimination claim on the basis of [Northeastern's] refusal to interview, discuss, consider or hire for an alternative faculty position.")]. Because his charge did not allege that EEOC had failed to hire him for those other positions based on age discrimination, Golub failed to exhaust his administrative remedies as to his failure-to-hire claim.

Thus, Golub has failed to allege that the Court's prior findings reflect a manifest error of law that would justify reconsideration or that justice requires a different outcome under either

Rule 59 or 60 of the Federal Rules of Civil Procedure. Accordingly, because Golub has failed to demonstrate that the Court's November Order was based on a manifest error of law or otherwise unjust, the motion to reconsider, [ECF No. 34], is DENIED.

## IV. THE MOTION TO DISMISS

Northeastern has moved to dismiss the amended complaint, which reasserts that Northeastern violated federal discrimination laws by terminating Golub's employment as the Master Teacher and Lead Instructor and by failing to hire him for other positions. [ECF No. 35 at 16–17]. These federal claims were dismissed with prejudice in the Court's November Order and the Court has just declined to reconsider that decision. [ECF No. 28 at 16].[1] Only the state-law claims set forth in Count Four remain properly before the Court. Count Four alleges that Northeastern breached its annual contracts with Golub for both the September 2017 through August 2018 academic year and the September 2018 through August 2019 academic year by terminating his employment as a Master Teacher and Lead Instructor. [ECF No. 35 at 17–18].

Despite the fact that his federal age discrimination claims have been dismissed, Golub still maintains that the Court has federal question jurisdiction under 28 U.S.C. § 1331 because he brings his claims under the ADEA. [ECF No. 35 at 7]. Where the Court has previously dismissed those claims with prejudice, however, it does not have subject matter jurisdiction under 28 U.S.C. § 1331.

---

[1] The Court notes that in the amended complaint Golub has separated what was originally Count One, [ECF No. 1 at 7–8], into Counts One and Two with Count One alleging that Northeastern violated federal law by terminating him as the Master Teacher and Lead Instructor and then Count Two alleging that offering him a subsequent contract as a part-time lecturer but not as a Master Teacher and Lead Instructor constituted a separate violation. [ECF No. 35 at 16–17]. Because Count One of the original complaint has already been dismissed with prejudice and included those same allegations, the Court will not consider the newly formulated claims.

Therefore, for the Court to have subject matter jurisdiction over the remaining state law claims, it must have diversity jurisdiction which requires Golub to demonstrate that there is complete diversity and that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. Though Golub opposes Northeastern's motion to dismiss, he does not address the arguments concerning the state-law contract claims and instead focuses on restating the federal age discrimination allegations. See [ECF No. 42-3 at 3–13]. Still, "[a] court may not automatically treat a plaintiff's failure [to oppose] a motion to dismiss as a procedural default warranting dismissal irrespective of whether the Complaint has merit, *that is*, the Court cannot simply allow a motion to dismiss as a sanction [for] a failure to oppose the motion." Phaneuf v. Lustig, Glaser & Wilson P.C., 148 F. Supp. 3d 72, 74 (D. Mass. 2015) (emphasis in original). The Court will therefore review the amended complaint to determine whether it sufficiently states a claim, despite Golub's failure to address Northeastern's arguments. Pomerleau v. W. Springfield Pub. Sch., 362 F.3d 143, 145 (1st Cir. 2004).

A.   **Legal Standard**

In evaluating a motion to dismiss under Rule 12(b)(1), the Court must determine whether the facts alleged in the complaint, "taken at face value," support subject matter jurisdiction. Gordo-González v. United States, 873 F.3d 32, 35 (1st Cir. 2017). Because Golub is invoking federal jurisdiction, he has the burden of establishing that the Court has subject matter jurisdiction. Amoche v. Guarantee Tr. Life Ins. Co., 556 F.3d 41, 48 (1st Cir. 2008). "When considering a motion to dismiss under 12(b)(1) . . . , the Court should apply a standard of review 'similar to that accorded to a dismissal for failure to state a claim' under subsection 12(b)(6)."

Rodriguez v. Mass. Parole Bd., No. 16-cv-11113, 2017 WL 706597, at *2 (D. Mass. Feb. 22, 2017) (quoting Menge v. N. Am. Specialty Ins. Co., 905 F. Supp. 2d 414, 416 (D.R.I. 2012)).

**B.     Discussion**

Golub alleges that Northeastern "breached its employment contract with [Golub], because [he] had a substantial, proper, and reasonable expectation to continue his role as the [Master Teacher and Lead Instructor] in [Northeastern's accounting and tax program], given the eight previous successive annual contracts . . . ." [ECF No. 35 at 4–5]. He seems to assert that the value of his contract satisfies the jurisdictional amount. The Court finds that he has failed to establish that, even if Northeastern breached a contract, the amount in controversy would be sufficient for federal diversity jurisdiction.

Golub first alleges that the appointment letters that designated him as eligible to receive teaching assignments were themselves contracts and that the Court may therefore extrapolate an amount in controversy from them. See, e.g., [ECF No. 35 at 11 (claiming that Golub "signed another annual contract and part-time faculty appointment for the 2018–19 academic school year")]. These alleged contracts offered Golub a position as a "part-time lecturer in the College of Professional Studies" for each specific semester. [ECF No. 21-1 at 37–39]. Once Golub accepted the appointment, he was then eligible to receive teaching assignments during that year, including working as a Master Teacher and/or Lead Instructor. [ECF No. 37-1 at 2].[2]

---

[2] For example, the appointment letter for the 2014–15 academic year explained that, "[o]nce [Golub] ha[d] accepted [his] appointment, [he would be] eligible to receive assignments to teach courses during the academic year. If [Golub] [we]re asked to teach a course, [he would] receive a separate letter that w[ould] provide the details and terms of the teaching assignment." [ECF No. 37-1 at 2]. The appointment letter for the 2018–19 academic year included the same language. See [ECF No. 21-1 at 40–42 ("Following acceptance of this appointment, you will be eligible to receive assignments to teach courses during the academic year. If you are asked to teach a course, you will receive a separate letter that will provide details of the teaching assignment.")].

13

The previous part-time lecturer appointment letters are insufficient to establish the existence of a contract and do not establish an amount in controversy.  First, the offer letters themselves make clear that they are not contracts, but rather only make Golub eligible to receive teaching contracts.  Second, even assuming that the offer letters were themselves contracts, Northeastern did not breach any duty or term set forth in those offer letters, nor is there anything in those letters that establishes an amount in controversy in excess of $75,000.  Therefore, the Court cannot determine the amount in controversy by extrapolating the amount that Golub would have been paid, had he received subsequent lecturing assignments, including as the Master Teacher and/or Lead Instructor.

To establish the amount in controversy, Golub would have to allege that he got a contract for a specific lecturing position, at a salary sufficient to satisfy the jurisdictional requirement, and that Northeastern breached that contract.  In an effort to establish the amount in controversy, Golub provides his 2016 and 2017 tax reports from Northeastern, [ECF No. 35 at 8; ECF No. 33-3 at 2–3], and alleges that "the average of the last two W-2 wage statements satisfy the amount in controversy for Federal Jurisdiction . . . ."  [ECF No. 42-3 at 8].  Golub has not indicated, however, what portion of the wages reflected in his tax returns was received in return for his work as a Master Teacher and/or Lead Instructor.

Further, information provided by Golub to the Court concerning his previous teaching assignments suggest that the pay for these assignments is insufficient to establish a sufficient amount in controversy.  The Court understands Golub to have been paid a non-benefits eligible stipend of $5,000 per year for his work as a "Co-Part-Time Faculty Affiliate."  [ECF No. 28 at 2 (citing ECF No. 1 at 1–2; ECF No. 11-5 at 2)].  A February 2010 Master Teacher assignment offer letter included with Golub's briefing indicates that he was paid "at the rate of $3,000 per

14

section . . . ." [ECF No. 42-4 at 35]. A similar August 2010 agreement indicates that he was also paid $3,000 per section for his work as a Lead Instructor. [ECF No. 42-5 at 2]. Golub has not alleged an amount in controversy for the academic year when Northeastern hired a new full-time faculty member, but it is evident that the assignments would be insufficient to meet the $75,000 amount in controversy requirement under 28 U.S.C. § 1332.

Because Golub has failed to allege facts sufficient to establish that the amount in controversy would allow the Court to exercise jurisdiction under 28 U.S.C. § 1332 and because the Court has dismissed the federal age discrimination claims and therefore lacks jurisdiction under 28 U.S.C. § 1331, the motion to dismiss, [ECF No. 36], is GRANTED.

## V.    CONCLUSION

Accordingly, the motion to reconsider, [ECF No. 34], is DENIED and the motion to dismiss the amended complaint, [ECF No. 36] is GRANTED for failure to establish that the Court has subject matter jurisdiction over Golub's state-law contract claims.

**SO ORDERED.**

June 10, 2020                                         /s/ Allison D. Burroughs
                                                      ALLISON D. BURROUGHS
                                                      U.S. DISTRICT JUDGE